**Vernell WIGGLESWORTH, Petitioner–Appellant,**

v.

**STATE OF OREGON, Respondent–Appellee.**

**No. 93–35912.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 16, 1994.

Decided March 9, 1995.

---

Ellen C. Pitcher, Asst. Federal Public Defender, Portland, OR, for petitioner-appellant.

Thomas H. Denney, Asst. Atty. Gen., Salem, OR, for respondent-appellee.

Before: THOMPSON and LEAVY, Circuit Judges, and TASHIMA, District Judge.*

DAVID R. THOMPSON, Circuit Judge:

Vernell Wigglesworth, an Oregon state prisoner, appeals the district court's denial of her petition for a writ of habeas corpus. She was convicted in state court of conspiracy to deliver a controlled substance (cocaine).[1] The chain of evidence that tied Wigglesworth to the conspiracy was not strong. An essential link in that chain was a lab report which indicated the presence of cocaine in water

---

* Hon. A. Wallace Tashima, United States District Judge for the Central District of California, sitting by designation.

1. Wigglesworth was convicted of conspiring to deliver a controlled substance, delivery of a controlled substance, and possession of a controlled substance. The state trial court merged the delivery conviction into the conspiracy conviction for the purposes of conviction and sentencing. It imposed concurrent sentences on the convictions for conspiracy and possession. On appeal, the Oregon Court of Appeal vacated the conviction for possession of a controlled substance, but affirmed the conspiracy conviction without discussion. *State v. Wigglesworth,* 107 Or.App. 239, 810 P.2d 411 *review denied,* 312 Or. 151, 817 P.2d 758 (1991).

Wigglesworth was flushing down a sink drain when she was arrested.

In this habeas proceeding, Wigglesworth argues that by admitting the lab report into evidence without some testimony to authenticate it, the state trial court violated her right to confrontation under the Sixth Amendment of the United States Constitution. She also contends that although the Oregon statute under which the lab report was admitted permitted her to call the lab technician and examine him as to the report's authenticity, this procedure relieved the state of its burden of proving an essential element of the crime with which she was charged, in violation of her rights under the Fifth and Fourteenth Amendments. We agree with this latter contention and order the writ issued.

## FACTS

Police suspected cocaine was being sold at the Rastafarian Club, an establishment operated by Vernell Wigglesworth (Wigglesworth) and her husband, John. The police fitted Thomas Smith, a confidential informant, with a body wire and gave him $115 in marked currency. Smith entered the Club and sat down at a table with Wigglesworth and John. Smith asked John to sell him some cocaine, but by that time Wigglesworth had left the table. John agreed to sell Smith 1/16 of an ounce of cocaine. John then got up, went to the back of the Club, and according to Smith, "got something" from Wigglesworth. He then returned to the table where Smith was sitting, took the marked money from Smith and handed Smith the cocaine. Smith then left the Club. Almost immediately thereafter, the police entered the Club to execute a search warrant. John tried to flee, but was caught outside the building with the marked bills.

At the time the police entered the Club, Wigglesworth was the only person inside. She was standing behind the bar. One of the officers saw both of her arms move toward the bar sink, and then heard water running. When the officers reached the bar, both sink taps were fully opened and water was overflowing the sink. The police took a sample of water from the sink trap. A laboratory tested the sample and issued a report that it contained cocaine.

At trial, over defense counsel's objection, the lab report was admitted into evidence without any authenticating testimony. Defense counsel contended the Oregon statute that allowed the introduction of the report without testimony to authenticate it violated Wigglesworth's right to confrontation under the Sixth Amendment. Defense counsel further objected on the ground that the statute, by requiring Wigglesworth to call the preparer of the report if she wished to challenge it, violated her right to due process by relieving the prosecution of its burden of proving an essential element of its case, in violation of the Fifth and Fourteenth Amendments. Wigglesworth renews these arguments in this appeal.

## DISCUSSION

### A. Admissibility of the Lab Report

■ We cannot determine whether the lab report may have been admissible under the public records and reports exception to the hearsay rule, Federal Rules of Evidence 803(8). *See United States v. DeWater*, 846 F.2d 528, 530 (9th Cir.1988). If the report was admissible under this exception to the hearsay rule, Wigglesworth's right of confrontation was not violated. *Id.*

We cannot decide this question because we cannot tell from the record before us what test was performed to determine the presence of cocaine in the sample of water; nor do we know whether the report recorded simply the objective results of a routine test, or whether it was dependent upon some subjective evaluation. *Compare United States v. Wilmer*, 799 F.2d 495, 501 (9th Cir.1986), *cert. denied*, 481 U.S. 1004, 107 S.Ct. 1626, 95 L.Ed.2d 200 (1987) (calibration report of a breathalizer operator held to be a routine, objective report admissible under the public records and reports exception to the hearsay rule, Fed.R.Evid. 803(8)(B)), *and United States v. Gilbert*, 774 F.2d 962, 965 (9th Cir.1985) (statement on card that fingerprint had been "lifted" from statue admissible under Fed.R.Evid. 803(8)(B)—"The routine act of reporting a latent print on an object is no different from inventorying items seized, it is ministerial, objective, and nonevaluative."); *with United States v. McClintock*, 748 F.2d

1278, 1292 (9th Cir.1984) (defendant's constitutional right to confrontation violated by admission into evidence of report of gemologist's in-lab evaluation of gems, because of the importance of the report in establishing the elements of the charged offense, the "apparent subjective decisions that enter into the evaluation of gems," and the failure to demonstrate the unavailability of the preparer of the report), *cert. denied,* 474 U.S. 822, 106 S.Ct. 75, 88 L.Ed.2d 61 (1985). *See also* Advisory Committee Notes to Fed.R.Evid. 803(8)(C) ("In one respect, however, the rule with respect to evaluat[ive] reports under item (c) is very specific; they are admissible only in civil cases and against the government in criminal cases in view of the almost certain collision with confrontation rights which would result from their use against the accused in a criminal case.").

We need not decide whether the lab report was admissible under *DeWater*'s Confrontation Clause analysis and the public records and reports exception to the hearsay rule. In this case, Wigglesworth challenges the report's admissibility on the additional ground that the procedure by which it was admitted violated her right to due process under the Fifth and Fourteenth Amendments. This question was not raised in *DeWater* or in any of the other cases cited. It is the question we now consider.

■ Oregon Revised Statute § 475.235 provides in relevant part:

(3) In all prosecutions under [the Uniform Controlled Substances Act] involving the analysis of a controlled substance or sample thereof, a certified copy of the analytical report signed by the director of the state police crime detection laboratory or the criminalist conducting the analysis shall be accepted as prima facie evidence of the results of analytical findings.

(4) Notwithstanding any statute or rule to the contrary, the defendant may subpoena the criminalist to testify at the preliminary hearing and trial of the issue at no cost to the defendant.

Wigglesworth contends this statute, as applied to her case, relieved the state of its burden to prove beyond a reasonable doubt all elements of the crime with which she was charged. *See In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). We agree.

Oregon Revised Statute § 475.235 poses twin risks to a defendant's due process rights. It places the defendant in a "Catch-22" situation—call the criminalist who prepared the report during the defendant's own case, and possibly bolster the prosecution's case, or forego examination of the criminalist and perhaps lose an opportunity to expose a defect in the report's authenticity. *Cf. Lowery v. Collins,* 988 F.2d 1364, *reh'g denied,* 996 F.2d 770 (5th Cir.1993).

This constitutional dilemma was avoided by the Oregon Supreme Court in *State v. Hancock,* 317 Or. 5, 854 P.2d 926, 929 (1993). There, the court interpreted Oregon Revised Statute § 475.235 to require that when requested by the defense, the prosecution must call the criminalist during its own case and before the report is received into evidence. *Hancock,* 854 P.2d at 929. Under this procedure, a defendant who wishes to challenge a lab report can put the prosecution to its proof and then cross-examine the criminalist. *Id.*

*Hancock* had not been decided when Wigglesworth was tried in Oregon state court, and the trial court did not implement a procedure such as *Hancock* outlined. As a result, the only way Wigglesworth could challenge the lab report was to pursue a course of action which carried with it the substantial risk of assisting the prosecution in establishing the report's authenticity. This effectively relieved the state of its burden of proof on an essential element of its case, and denied Wigglesworth due process under the Fifth and Fourteenth Amendments.

We stress that defense counsel properly and sufficiently objected to admission of the report on the ground that the statute unconstitutionally relieved the prosecution of the burden of proof on an essential element of its case. The trial court was thus given the opportunity, which it did not take, to apply Oregon Revised Statute § 475.235 as the Oregon Supreme Court later applied it in *Hancock.*

## B. Sufficiency of the Evidence

Although the lab report should not have been admitted into evidence over Wigglesworth's due process objection,[2] this does not end our inquiry. "The existence of other grounds for reversal does not avoid the necessity of reviewing the sufficiency of the evidence." *United States v. Bishop*, 959 F.2d 820, 828 (9th Cir.1992) (citations and internal quotation marks omitted). The critical inquiry we undertake in our review of the sufficiency of the evidence is whether, without the lab technician's report, any rational trier of fact could have found the essential elements of the crime of conviction (here, conspiracy to deliver cocaine) beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Bishop*, 959 F.2d at 829.

■ Without the lab report, the evidence is insufficient to establish a conspiracy between Wigglesworth and her husband, John, to deliver cocaine to Smith. Wigglesworth left the table before any talk of a drug transaction. Although Smith testified John got "something" from her when he left the table where Smith was sitting, and then returned to complete the cocaine transaction, there was no evidence that the "something" John got from Wigglesworth was cocaine. She was running water down the sink when the officers entered the Club, but she had been told to do so by a plumber who had been called earlier that day to unplug the sink and who had left shortly before the police arrived.

In view of this state of the evidence, the lab technician's report was critical. It enabled the jury to infer that Wigglesworth was not simply following the plumber's instructions when she was running water down the sink, but was trying to destroy evidence of cocaine, because that was what was found in the sink trap. This permitted the jury to infer not only that cocaine was present in the Club, but that Wigglesworth had access to it. This in turn permitted an inference that the "something" John got from her after he struck the bargain with Smith and just before he sold cocaine to Smith was in fact cocaine—cocaine which she and John agreed to sell to Smith. Proof of such an agreement was an essential element of the conspiracy charge. *See State v. Brewer*, 12 Or.App. 105, 504 P.2d 1067, 1069, *aff'd*, 267 Or. 346, 517 P.2d 264 (1973). Without the lab report, that proof was lacking.

■ Even though we conclude the lab technician's report should not have been admitted into evidence over Wigglesworth's due process objection, and without it the evidence was insufficient to convict her of conspiracy to deliver cocaine, this does not mean she is entitled to an acquittal. The defect in Wigglesworth's state court trial, although of constitutional dimension, can be remedied on retrial if the state so chooses. *See Lockhart v. Nelson*, 488 U.S. 33, 40, 109 S.Ct. 285, 290, 102 L.Ed.2d 265 (1988) (holding that "the Double Jeopardy Clause allows retrial when a reviewing court determines that a defendant's conviction must be reversed because evidence was erroneously admitted against him, and also concludes that without the inadmissible evidence there was insufficient evidence to support a conviction").

## CONCLUSION

Wigglesworth is entitled to a new trial in which the authenticity of the lab technician's report is properly established by the state. We reverse the district court and direct that the writ of habeas corpus shall issue unless, within 120 days, the state affords Wigglesworth a new trial.

REVERSED.

---

**2.** We do not reach the question whether admission of the report violated Wigglesworth's rights under the Confrontation Clause.